Terence Wayne LaFOUNTAIN,
Appellant,

v.

WEBB INDUSTRIES CORPORATION and Lloyd H. Knost, individually and trading as Reed Engineering Company; Ted Reed, individually and trading as Reed Engineering Company.

No. 91–1305.

United States Court of Appeals,
Third Circuit.

Argued Oct. 15, 1991.

Decided Dec. 11, 1991.

---

Joseph Lurie (argued), John A. Beranbaum, Galfand, Berger, Lurie & March, Philadelphia, Pa., for appellant Terence W. LaFountain.

Thomas P. Wagner (argued), Judith A. Schneider, Rawle & Henderson, Philadelphia, Pa., for appellee Webb Industries Corp.

Before SLOVITER, Chief Judge, COWEN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In this diversity action, we assume that Pennsylvania would adopt the product line exception to successor responsibility in product liability cases but conclude that the availability of a remedy against the original manufacturer makes the exception inapplicable. We also conclude that, in the absence of a commercial relationship, the successor corporation does not owe a duty to warn a customer of the predecessor. Accordingly, we will affirm the district court's grant of summary judgment to the defendant. 759 F.Supp. 236.

Plaintiff was injured while operating a roll bending machine at his place of employment on January 11, 1988. He brought suit against Webb Industries, Corp.; Lloyd Knost, individually, and trading as Reed Engineering Company; and Ted Reed, individually and trading as Reed Engineering Company. The complaint alleges negligence, strict liability, and breach of warranty.

The machine, designed and manufactured by the Reed Engineering Company of Carthage, Missouri, was sold in 1949 to the plaintiff's employer, Hauck Manufacturing Company, then located in Brooklyn, New York. In 1964, Hauck moved its plant and the machine to Pennsylvania.

At the time of the sale, Reed Engineering was a partnership operated by Knost and Reed. In 1950, Knost purchased Reed's interest in the company and operat-

ed it as a sole proprietorship, retaining the original name.

In 1954, Knost granted Webb Industries, Corp. the exclusive right to manufacture, use, and sell products formerly made by Reed Engineering, including roll bending machines. As part of the licensing arrangement, Webb received the right to patents, designs, drawings, patterns, goodwill, fixtures, and customer records. Knost agreed to discontinue manufacture of the products covered by the contract. Webb sold the products under the name of "Reed Equipment Division of Webb Corporation" and on at least one occasion advertised itself as selling "Reed" products, but did not specifically mention roll bending machines.

In 1959, Knost sold to Webb the "Reed product line" which was the subject of the 1954 licensing agreement. Webb continues to manufacture products covered by the contract, including the same model roll bending machine designed by Reed Engineering. Knost continued in other business lines until he retired in 1966. He presently lives in Missouri and apparently is in very poor health.

Webb supplies replacement parts for roll bending machines. In 1973 and in 1980, it sold Hauck an "off the shelf" part described as a floating bronze bushing, at costs of $69.85 and $178.63, respectively. Hauck has in its files a manual entitled "Installation and Operating Instructions for Webb ... Bending Rolls and Slip Roll Formers." Additionally, it possesses two parts lists for the roll bending machine, under the names of "Reed Equipment Division of the Webb Corporation" and "The Webb Corporation," respectively. Webb, however, never mailed any printed matter to Hauck and it is not known how this material came to be in its files.

In 1970, Webb redesigned the roll bending machine to incorporate certain safety features as standard equipment. In 1974 and 1976, Webb sent letters to its customers recommending that safety features be added to the product and enclosed a warning sign to be attached to the machines. These letters and signs were not sent to customers who bought machines from Reed Engineering before 1954, although Webb had been given records of those who had purchased between 1948 and 1954.

Webb did not continue any service contracts of Knost or Reed Engineering and none is mentioned in either the 1954 or 1959 agreements. Webb has not inspected, serviced, or repaired any of Hauck's machines, or even visited its plant. Nor has Webb solicited business from any customers who purchased machinery from Reed Engineering before 1954. Webb does not advertise to the general public and has a one person sales force.

Plaintiff asserted liability against Webb based on the "product line" exception to the general rule of successor non-liability and on an alleged failure to warn.

The district court entered summary judgment in favor of defendant Webb and dismissed the suit against defendant Knost for lack of personal jurisdiction.[1] The court noted that the Pennsylvania Supreme Court had not yet addressed the "product line" basis for successor liability, but assumed its acceptance arguendo. Despite that postulate, the court concluded that the plaintiff continued to have a remedy against Knost, the original manufacturer. Consequently, the general rule of successor non-liability was applicable.

The court also determined that in the absence of a relationship that imposed certain duties and responsibilities, Webb had no duty to warn Hauck.

The parties and the district court have adopted Pennsylvania law in this litigation. We will do likewise.

## I.

### SUCCESSOR LIABILITY

In general, when one corporation sells or transfers its assets to a second corporation, the successor does not become liable for the debts and liabilities of the

---

1. Defendant Ted Reed had died before the suit was filed and his estate has not been substituted as a defendant. Consequently, there has been no service as to that defendant and the judgment of the district court is final.

predecessor. There are, however, several well-established exceptions to this rule, none of which are applicable here.

■ In the context of products liability cases, some courts have expanded on the traditional corporate law exceptions to this non-liability rule. The "product line" exception provides that when a corporation buys substantially all of the assets of a corporate manufacturer and thereafter continues essentially the same manufacturing operation it may be strictly liable for defects in products in the same line even though they were in fact made by the predecessor. This exception has received limited acceptance, and the supreme courts of only three states have adopted it, California, Washington, and New Jersey. The Supreme Court of New Hampshire declined to fulfill the prophecy of the Court of Appeals for the First Circuit that the state court would accept policy arguments favoring application of the exception. See *Simoneau v. South Bend Lathe, Inc.*, 130 N.H. 466, 543 A.2d 407, 409 (1988), disavowing the product line exception apparently adopted in *Cyr v. B. Offen & Co.*, 501 F.2d 1145, 1154 (1st Cir.1974).

A Pennsylvania Superior Court decision discussing the product line exception is *Dawejko v. Jorgensen Steel Co.*, 290 Pa.Super. 15, 434 A.2d 106 (1981) where the court decided to adopt the theory as outlined in *Ramirez v. Amsted Indus.*, 86 N.J. 332, 431 A.2d 811 (1981).

In *Conway v. White Trucks, Div. of White Motor Corp.*, 885 F.2d 90 (3d Cir. 1989), we reviewed in detail the asserted bases for the product line exception to the general rule of non-liability of a successor corporation. Although the Supreme Court of Pennsylvania had not addressed the issue, for purposes of discussion we assumed that *Dawejko* represented Pennsylvania

law. We predicted, however, that the exception would not apply "where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim.... [A]s a logical matter, the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception." *Id.* at 95. That is because the rationale of the product line exception is that "the virtual destruction of the plaintiff's remedies against the original manufacturer [was] caused by the successor's acquisition." *Id.* at 97.

Nothing has happened since *Conway* was decided to indicate any weakening of its holding. In *South Bend Lathe, Inc. v. Amsted Indus.*, 925 F.2d 1043, 1047 (7th Cir.1991), the Court of Appeals for the Seventh Circuit said, "The continuation of the predecessor corporation bars recovery from the successor under the product line rule in every decision we have found that considers the issue."

As we indicated in *Polius v. Clark Equip. Co.*, 802 F.2d 75 (3d Cir.1986), the liability of a successor entity is generally considered in terms of one corporation purchasing the assets of or stock in, or merging with, a predecessor corporation. Here, however, the seller is not a corporation, but an individual who has sold certain assets to a corporation. While that fact does not affect the ultimate outcome in this case, it is a distinction worthy of comment.

■ In the context of a sale of assets, a successor corporation may sometimes be held liable so as to protect creditors of the predecessor corporation. Corporate law provides such protection because a corporation is an entity created by statute that can be dissolved at any time, thus leaving creditors, including those injured by products of the predecessor, without a cause of action.[2]

---

2. For discussions of the policies underlying the creation of successor liability and in particular the product line exception, see David Morris Phillips, *Products Liability of Successor Corporations: A Corporate and Commercial Law Perspective*, 11 Hofstra L.Rev. 249 (1982); Jerry J. Phillips, *Product Line Continuity and Successor Corporation Liability*, 58 N.Y.U. L.Rev. 906 (1983); Note, *A Policy Analysis of a Successor Corporation's Liability for Its Predecessor's Defective Products When the Successor Has Acquired the Predecessor's Assets for Cash*, 71 Marq.L.Rev. 815 (1988); Note, *Imposing Strict Liability Upon a Successor Corporation for the Defective Products of its Corporate Predecessor: Proposed Alternatives to the Product Line Theory of Liability*, 23 B.C.L.Rev. 1397 (1982).

A sole proprietor, on the other hand, remains liable for his debts and liabilities.[3]

■ For present purposes, we will assume arguendo that the product line exception applies despite the fact that the seller was an individual. The character of the predecessor entity does not change the outcome here because one of the prerequisites of the product line exception—lack of a remedy against the predecessor—has not been established.

Plaintiff argues that the existence of a right to proceed against Knost should not bar a cause of action against Webb. He maintains that because Webb has liability insurance the loss would be distributed among the members of society—the end that the product line exception is designed to obtain.

We reject the plaintiff's arguments. The presence or absence of insurance is not a prerequisite for, or defense against, liability under the product liability doctrine. We also note that, although it is irrelevant, Knost has not been shown to lack insurance coverage. Moreover, if plaintiff would have us focus on insurance coverage, then it should also be relevant that he has received workmens compensation and that his carrier would be entitled to subrogate its interest against the defendant's liability carrier. Whether workmens compensation benefits are inadequate as plaintiff implies is just as irrelevant as the limits of liability in the defendant's policy. Furthermore, it has not been demonstrated that the needs of one insurance carrier to recover from another is a matter of such social importance as to warrant distorting basic and traditional tort and corporate concepts.

The district court correctly decided that in accordance with *Conway*, the existence of a potential remedy against the actual manufacturer destroys the basis for invoking the product line exception.

## II.

### THE DUTY TO WARN

As an alternative theory, plaintiff asserts that the defendant failed in its duty to warn customers of its predecessor. He points out that Webb had received from Knost the shop orders for 1,520 machines and the names and addresses of those who had purchased the products between 1948 and 1954.

Because this alternative theory is actually based upon negligence, the plaintiff has the burden to establish a duty on the part of the defendant and a breach of that obligation. Consequently, plaintiff must demonstrate that there was a relationship between the parties that gave rise to a duty.

■ Tort law distinguishes action from nonaction. Whereas misfeasance may create a new risk of harm to a plaintiff, non-feasance may at least not make the situation worse. Liability for non-feasance depends on a finding of a relationship between the parties of such a character that social policy justifies the imposition of a duty to act. *See* W. Page Keeton, *Prosser and Keeton on Torts* § 56, at 374 (5th Ed.1984).

Consistent with that approach, case law generally requires more than mere corporate succession to trigger the duty to warn. *See, e.g., Florom v. Elliott Mfg.,* 867 F.2d 570, 577 (10th Cir.1989); *Tucker v. Paxson Mach. Co.,* 645 F.2d 620, 626–27 (8th Cir. 1981); *Gee v. Tenneco, Inc.,* 615 F.2d 857, 866 (9th Cir.1980); *Travis v. Harris Corp.,* 565 F.2d 443, 448–49 (7th Cir.1977); *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 442–43 (7th Cir.1977). As we said in *Polius*, a "successor corporation's liability stems not from its status as a successor, but from its establishment of a relationship with the customer that imposes certain duties and responsibilities." 802 F.2d at 84. The tra-

**3.** The majority and dissenting opinions in *Tift v. Forage King Indus.,* 108 Wis.2d 72, 322 N.W.2d 14 (1982), discuss some of the ramifications that may be present when a successor corporation takes over the assets of a sole proprietorship. *See also Lemire v. Garrard Drugs,* 95 Mich.App. 520, 291 N.W.2d 103, 105 (1980) (successor liability doctrine not applicable in case involving sole proprietorship); Annotation, *Successor Products Liability: Form of Business Organization of Successor or Predecessor as Affecting Successor Liability,* 32 A.L.R.4th 196 (1984).

ditional tort notion of liability for fault thus comes into play. *Travis*, 565 F.2d at 448.

The Pennsylvania Supreme Court has yet to address the question of the duty to warn a predecessor's customers. However, as we explained in *Polius*, the courts that have discussed this issue have looked to such factors as succession to service contracts, coverage of the particular machine by a contract, service of that machine by the successor, and the successor's knowledge of both the defect and the machine owner's location. *Polius*, 802 F.2d at 84.

■ Here, Webb knew of the defect and, arguably, it could have located Hauck by searching the records that Knost had delivered. In addition, on two occasions Webb sold a small replacement part to Hauck. Nothing indicates, however, that these incidents were other than casual contacts by Hauck.

These factors do nothing more than establish constructive knowledge on the part of Webb. That is not enough. *Cf. Polius*, 802 F.2d at 84 n. 10. Plaintiff must show that the successor had an established relationship with the predecessor's customer. *See J & B Co. v. Bellanca Aircraft Corp.*, 911 F.2d 152, 154 (8th Cir.1990); *Travis*, 565 F.2d at 449. No such relationship has been shown here.

Webb did not succeed to any service contracts of Reed Engineering, nor did it enter into any contracts with Hauck. Moreover, Webb never serviced Hauck's machines. Accordingly, it had no relationship with Hauck that resulted in a legal responsibility to warn. *See Tracey v. Winchester Repeating Arms Co.*, 745 F.Supp. 1099, 1111 (E.D.Pa.1990) (applying Pennsylvania law), *aff'd mem.*, 928 F.2d 397 (3d Cir. 1991). The fact that Webb undertook to warn its own customers does not establish any duty to include its predecessor's customers in that program.

Our review of the existing case law persuades us that the Supreme Court of Pennsylvania would require a relationship between the customer and successor entity similar to the one we described in *Polius*. In the absence of such evidence, we conclude that the district court properly decided in favor of Webb on the duty to warn.

The judgment of the district court will be affirmed.