Curt **BOGART** and Margaret Bogart, h/w

v.

**PHASE II PASTA MACHINES, INC., Pasta–Mat, Inc., Dominioni, P. Dominioni, and Officiano Meccanica Capitani.**

Civ. A. No. 91–6183.

United States District Court,
E.D. Pennsylvania.

Jan. 11, 1993.

Anne E. Pedersen, Philadelphia, PA, for plaintiffs.

Barry F. Penn, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In September, 1990, Curt Bogart's arm was severed by a pasta-making machine in the course of his employment. Bogart sued the manufacturers and distributors of the machine. One of the defendants, Phase II Pasta Machines, Inc., the alleged successor to the company which sold the machine to Bogart's employer in 1985, has moved for summary judgment on the ground that 1) it is *not* the successor corporation to the original seller-corporation, and 2) even if it is, none of the exceptions to the successor non-liability rule applies.

I disagree with both of Phase II's arguments and will deny its motion for summary judgment.

None of the parties contends Phase II actually sold the machine in 1985. It is undisputed that machine was imported and sold to Bogart's employer by Pasta–Mat, Inc., and that Phase II was not incorporated until January 11, 1990.

Nonetheless, Phase II can be liable to Bogart for damages if Phase II is the successor corporation to Pasta–Mat and is subject to at least one of the exceptions to the rule of successor non-liability.

### I. *Phase II is a Successor Corporation to Pasta–Mat*

 Under Pennsylvania law,[1] a newly-formed corporation is a "successor corporation" to a company whose assets it acquires, either in whole or in part. Phase II argues it cannot be Pasta–Mat's successor corporation because Pasta–Mat had no assets to transfer (its office building was rented, it kept no inventory, it had no service contracts)—and therefore Phase II cannot have "acquired" Pasta–Mat's assets. I find, however, that while Pasta–Mat may not have had any tangible assets, it had significant intangible assets *all* of which it transferred to Phase II. Phase II therefore qualifies Pasta–Mat's successor.

Pasta–Mat started importing and distributing Italian pasta-making machines in 1957. Gary Valenti and Attilio Giovannini owned the company and hired Michael S. Wilson, Valenti's son-in-law, to help run it. In 1980, Wilson acquired a one-third interest in Pasta–Mat from Valenti and Giovannini. Gradually, Valenti and Giovannini ceded control of daily operations to Wilson. When the two older partners decided to retire, Wilson took the opportunity to re-incorporate the company under the name "Phase II Pasta Machines." Wilson explained he had always disliked the name "Pasta–Mat," and it had been regularly confused with similarly named competitors. *See* Deposition of Michael S. Wilson ("Deposition") at 22–23. Valenti and Giovannini stayed on as registered share-

---

1. This is a diversity action and Pennsylvania law applies.

holders of Phase II. Pasta–Mat was formally dissolved on May 31, 1990.

All of Pasta–Mat's assets were transferred to Phase II. Wilson continued to run the daily operations of the new company. Valenti still served as the lifeline to manufacturers in Italy.[2] Giovannini stayed on to consult and train Phase II employees. (Deposition at 55.) Phase II also stayed in the same location, a building owned by SOA Realty—whose principals are also Wilson, Valenti, and Giovannini. (Deposition at 39.) Phase II had Pasta–Mat's phone calls forwarded to its own line so it could keep Pasta–Mat's customers and retain repair contracts. (Deposition at 74.) Phase II kept the customer list Wilson had compiled at Pasta–Mat. (Deposition at 37.) Since these were all the assets Pasta–Mat had, I conclude Phase II did "acquire" Pasta–Mat's assets and is therefore its successor corporation.

II. *Phase II Inherits Pasta–Mat's Liabilities under the Continuation and Product Line Exceptions*

■ The general rule under Pennsylvania common law is that successor corporations acquire assets but not liabilities. *See Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308 (3d Cir.), *cert. denied,* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). In *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981), the Pennsylvania Superior Court enumerated the five widely-made exceptions to the non-liability rule and articulated a sixth, the product line exception. *See Dawejko,* 434 A.2d at 107–11.[3] I find Phase II falls within both the "continuation" and product line exceptions to this rule

and must be held to have assumed Pasta–Mat's liabilities.

■ Traditionally, the business continuation exception applies only when there is a common identity of officers, directors, and stock between the selling and purchasing corporations, and only one corporation after the transfer. *Dawejko,* 434 A.2d at 108. However, a "continuation" has also been defined more broadly, with the emphasis being shifted from corporate formalities to an inquiry regarding the nature of the business operations. *Id.*

■ In this case, under either test Phase II is a continuation of Pasta–Mat. The officers and directors of Phase II are identical: Wilson, Valenti, and Giovannini. While Pasta–Mat survived on paper for approximately five months after Phase II's incorporation, it transacted no business separate from that of Phase II. (Deposition at 29–30.) Phase II's business operations were clearly a continuation of Pasta–Mat's. Phase II imported and sold pasta machines, affixing to them its own distributor labels. Phase II even sold machines which were still labeled "Pasta–Mat." [4] Phase II never notified Pasta–Mat's customers that a new or different business was beginning. It did its best to serve Pasta–Mat's customers without interruption.[5] Consequently, Phase II must also be held to have acquired the liabilities of Pasta–Mat. As the court in *Dawejko* wrote:

Justice would be offended if a corporation which holds itself out as a particular company for the purpose of sales would not be estopped from denying that it is that company for the purpose of determining products liability.

(3d Cir.1991) (successor has no duty to warn predecessor's customers absent its own established relationship with them).

---

**2.** Deposition at 59–60. As Wilson also said, "I was dragging my feet [in creating Phase II] because my father-in-law had all the connections in Italy that we buy open account from Italy.

"So in other words, the factories know his face. They know him as a person. And the longer he remained in the corporation, the more assured of the financial stability we were—you know, more assurance we had of financial stability." *Id.* at 27.

**3.** A seventh exception, the duty to warn, may be developing. *See Polius v. Clark Equipment Co.,* 802 F.2d 75 (3d Cir.1986). *But see LaFountain v. Webb Industries Corp.,* 951 F.2d 544, 548–49

**4.** *See* Affidavit of Paul Brown, Exhibit C to *Plaintiff's Response in Opposition to Phase II's Motion for Summary Judgment,* ¶ 6.

**5.** *See* Deposition at 74. One customer avers he was expressly led to believe the companies were the same. *See* Affidavit of James J. DiBianca, president of Pasta Natale, Inc. (Bogart's employer), Exhibit B to *Plaintiff's Response in Opposition to Phase II's Motion for Summary Judgment,* ¶¶ 4, 6.

*Dawejko,* 434 A.2d at 109. Phase II was a continuation of Pasta–Mat for purposes of the non-liability rule.

■ Alternatively, Phase II is liable under the product line exception articulated in *Dawejko.* Under that exception:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Id.* 434 A.2d at 110, quoting *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981). While the Pennsylvania Supreme Court has not expressly adopted this exception, it has been regularly approved since 1981 by state and federal courts. *See e.g., Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602, 606 (1992); *LaFountain v. Webb Industries Corp.,* 951 F.2d 544, 547 (3d Cir.1991); *Conway v. White Trucks, Div. of White Motor Corp.,* 385 F.2d 90, 97 (3d Cir.1989).

*Dawejko* urges a fact-specific analysis of whether a successor corporation has "undertake[n] essentially the same ... operation ... of the same product line." The relevant factors for consideration include: whether the successor corporation advertised itself as an ongoing enterprise; whether it maintained the same product, name, personnel, property, and clients; and whether it acquired the predecessor corporation's name and good will and required the predecessor to dissolve. *See Dawejko,* 434 A.2d at 110–11. Again, in this case, most of those considerations point to Phase II's liability. Phase II held itself out as the same company as Pasta–Mat, transferring Pasta–Mat's calls to itself and continuing business with Pasta–Mat's former clients as though no change had occurred. It maintained the same principal personnel, location, product, and customers. It acquired Pasta–Mat's good will, including its customer list. And Pasta–Mat dissolved, as intended, fairly immediately after Phase II's incorporation.

The continuation and product line exceptions apply. To the extent Pasta–Mat would have been held strictly liable for the sale or distribution of a defective machine, Phase II now stands in its shoes. I must deny its motion for summary judgment.[6]

---

**6.** Phase II also argues that since P. Dominioni, the Italian manufacturer which may have made the machine, still exists, there remains a full remedy against that company so that successor liability does not apply at all. *See LaFountain,* 951 F.2d at 548; *Dawejko,* 434 A.2d at 109. This argument must fail. First, it is not clear P. Dominioni *is* available for civil recovery. Second, there is some dispute as to whether P. Dominioni or Officina Meccanica Capitani, a third defendant, actually made the machine. Most important, though, the point of the "remedy against the original manufacturer" discussions in both *LaFountain* and *Dawejko* is that successor corporations whose *predecessors* still exist and can still be sued must be exonerated. In other words, if *Pasta–Mat* still existed in any form, successor liability would make no sense. But the fact that Italian manufacturers exist and may be liable along with the distributor is irrelevant to the liability Phase II acquires from Pasta–Mat.