**FEDERAL INSURANCE COMPANY, as subrogee of Thomas R. and Linda R. Pheasant, Plaintiff,**

v.

**GLENN D. LIVELSBERGER, INC., t/a Heritage Builders, Inc. and Minwax Company, Inc., Defendants.**

**Civ. A. No. 93–0438.**

United States District Court, M.D. Pennsylvania.

Sept. 12, 1994.

William J. Schmidt, Philadelphia, PA, for plaintiff.

Andrew J. Gallogly, Philadelphia, PA, for Livelsberger.

Wayne A. Graver, Philadelphia, PA, for Minwax.

## MEMORANDUM

VANASKIE, District Judge.

Plaintiff Federal Insurance Company, as subrogee of Thomas R. and Linda R. Pheasant (hereinafter referred to as "Federal Insurance"), has moved for partial summary judgment on the issue of whether defendant Minwax Company, Inc. ("Minwax") "is liable as a successor corporation for all defects in any unit of the product line known as Watco Danish Oil Finish, [irrespective of] whether any individual unit, formula, label, or package of that product line was manufactured and distributed by Watco–Dennis Corporation or Minwax...." (Federal Insurance Motion for Partial Summary Judgment (Dkt. Entry # 49) at p. 4.) Because there is a genuine dispute as to whether Federal Insurance has a potential remedy against Watco–Dennis Corporation (now known as Denwat Corporation), the predecessor producer of the product in question, Federal Insurance's Motion will be denied.

## BACKGROUND

Federal Insurance provided homeowners insurance coverage to Thomas R. and Linda R. Pheasant for their home located at 49 Hillcrest Road, Wormleysburg, Pennsylvania. The home was severely damaged in a fire on April 2, 1991. Federal Insurance paid in excess of $2 million to the Pheasants for damages caused by the fire.

Federal Insurance apparently recovered a number of cans from the scene of the fire, including two cans which are alleged to have contained Watco Danish Oil Finish. The cans in question were burned to the extent that batch number or other markings identifying the date of manufacture cannot be discerned. It is thus unclear whether the Watco Danish Oil Finisher that is alleged to be the cause of the fire was produced by Watco–Dennis or by Minwax.

On March 29, 1993, Federal Insurance brought this subrogation action, naming as defendants Minwax and Glenn D. Livelsberger, Inc., t/a Heritage Builders, which had been engaged in the renovation of the Pheasants' home at the time of the fire. Federal Insurance contends that the fire was caused by the spontaneous combustion of rags soaked with Watco Danish Oil Finish.[1]

Prior to December, 1988, Watco Danish Oil Finish was produced by Watco–Dennis. By agreement dated December 29, 1988, Minwax acquired substantially all of the assets of Watco–Dennis, including the product line known as Watco Danish Oil Finish.

In acquiring the assets of Watco–Dennis, Minwax agreed to assume only certain liabilities. (*See* Exhibit "C" to the Federal Insurance Motion (Dkt Entry # 58).) Under the terms of the Agreement with Watco–Dennis, a total of $1.5 million was placed in an escrow account to serve as security for the obligations of Watco–Dennis and its shareholders under the purchase agreement. (*Id.*) It appears that these funds remain escrowed. It also appears that the predecessor producer of Watco–Danish Oil Finish has maintained as much as $6 million in primary and excess coverage for product liability claims such as those asserted in this matter. Finally, it appears that Watco–Dennis and its shareholders agreed to indemnify Minwax

---

**1.** Federal Insurance and Glenn D. Livelsberger, Inc. have entered into a settlement, resolving Livelsberger's liability to Federal Insurance and the Pheasants.

against liability for certain product liability claims.

It is undisputed that among the assets purchased by Minwax were Watco–Dennis customer lists; chemical formulas for Watco Danish Oil Finish; and a label inventory. It is also undisputed that shortly after the acquisition of the assets of Watco–Dennis, Minwax assumed production of Watco Danish Oil Finish. Labeling on cans of Watco Danish Oil Finish presented substantially the same appearance, whether manufactured by Watco–Dennis or Minwax.

Watco–Dennis changed its name to Denwat Corporation ("Denwat") shortly after its assets were acquired by Minwax. Denwat was not a "working" corporation, and never manufactured or produced any products. A Certificate of Election to Wind Up and Dissolve Denwat Corporation has been filed. Denwat does not own any physical, tangible or intangible assets, with perhaps the exception of its interests in the escrow account and the products liability insurance policy.

By Order dated March 25, 1994, Federal Insurance was granted leave to file an Amended Complaint naming as additional defendants Watco–Dennis and Denwat. The Amended Complaint was filed on April 1, 1994. Watco–Dennis and Denwat failed to respond to the Amended Complaint, and Federal Insurance caused default to be entered against Watco–Dennis and Denwat on August 24, 1994. Watco—Dennis and Denwat have moved to set aside the default. (Dkt. Entry # 97).

## DISCUSSION

### A.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Thus, summary judgment will not lie "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202

(1986). There is no issue for trial unless sufficient evidence exists which favors the non-moving party so that a jury may return a verdict for that party. *Id.* at 249–50, 106 S.Ct. at 2510–11. A fact is "material" if proof of its existence or non-existence would affect the outcome of the lawsuit under the law applicable to the case. *Id.* at 248, 106 S.Ct. at 2510.

The burden of demonstrating the absence of genuine issues of material fact rests with the moving party regardless of which party has the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against a moving party, and the entire record must be examined in the light most favorable to the non-moving party. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3rd Cir.1993); *Continental Insurance v. Bodie*, 682 F.2d 436 (3rd Cir.1982).

### B.

Minwax's motion raises the question of the liability of a company acquiring the assets of another company for the torts of the acquired company. As a general rule, "where one company sells or transfers all of its assets to another, the second entity does not become liable for the debts and liabilities, including torts, of the transferor." *Polius v. Clark Equipment Co.*, 802 F.2d 75, 77 (3rd Cir.1986). Exceptions to this general rules of non-liability have been recognized where it is established that "(1) the purchaser expressly or impliedly agrees to assume such obligation; (2) the transaction amounts to a consolidation or merger; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulently entered into to escape liability." *Husak v. Berkel*, 234 Pa.Super. 452, 456, 341 A.2d 174, 176 (1975).

Federal Insurance does not contend that Minwax expressly or impliedly agreed to assume liability for damages allegedly caused by Watco–Dennis' products. Nor does Federal Insurance contend that any of the other above-enumerated exceptions to the general

rule apply here. Instead, Federal Insurance argues that Minwax should be held liable as a successor corporation under the "product line" exception to the general rule of non-liability adopted by the Pennsylvania Superior Court in *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106, 110 (1981).

Minwax agrees that the Pennsylvania Superior Court has adopted the following expression of the product line rule:

> Where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor. *Id.*

Minwax maintains, however, that the "product line" exception may only be applied when each of the following circumstances has been established:

> (1) The virtual destruction of plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business. *Id.* at 22, 434 A.2d at 109.

Minwax argues that since its predecessor producer of the product remains in existence and there are assets and/or insurance coverage to satisfy a judgment against the predecessor company, Federal Insurance cannot satisfy the requirement that its remedy against Denwat has been destroyed.

Federal Insurance contends that Pennsylvania law does not require that each of the three enumerated criteria set forth above must be established to invoke the product line exception. Conceding that the Pennsylvania Supreme Court has not addressed the product line exception, and invoking the well-established principle that a federal court sit-

ting in diversity must predict how the Pennsylvania Supreme Court would rule on this issue, *see Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3rd Cir. 1988), Federal Insurance seems to be inviting this Court to predict that the Pennsylvania Supreme Court would not require virtual elimination of plaintiff's remedies against the original manufacturer as a *sine qua non* of the product line exception.

This Court, however, cannot accept the invitation. Our Court of Appeals has already made its prediction on this point, and that prediction is the only one that matters here. *See Sprague, Levinson & Thall v. Advest, Inc.,* 623 F.Supp. 11, 14 (E.D.Pa.), *aff'd,* 780 F.2d 1016 (3rd Cir.1985).

In *Conway v. White Trucks, a Div. of White Motor Corp.,* 885 F.2d 90 (3rd Cir. 1989), our Court of Appeals considered the "product line" exception under Pennsylvania law. Then Chief Judge Conaboy of this Court had ruled in that case that the product line exception was inapplicable because " 'the record clearly reflect[ed]' that there was available insurance coverage and a special fund was set aside in the course of the [bankruptcy] reorganization [of the predecessor corporation] to accommodate those in the position of the [p]laintiffs," but the plaintiffs had failed to pursue the available remedies by timely filing a proof of claim in the bankruptcy proceedings. *Conway v. White Trucks, a Div. of White Motor Corp.,* 692 F.Supp. 442, 452 (M.D.Pa.1988). Chief Judge Sloviter, writing for the unanimous Court of Appeals, affirmed Chief Judge Conaboy's ruling, explaining:

> We predict ... that [Pennsylvania] would not apply [the product line] exception in cases *where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim.*

> The product line exception evolved out of concern by the California Supreme Court (the Court from which the strict liability tort emanated) about the effect of the successor non-liability rule on the risk shifting principle which underlies strict tort liability for defective products. The rationale

for the strict liability rule is that the manufacturer is in a better position to distribute the cost of insuring against such injuries than is the defenseless victim. If a remedy against the original manufacturer was available, however, the consumer has not been obliged to bear the risk and the justification for imposing successor liability evaporates. Thus, as a logical matter, *the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception.* Otherwise, the exception would in effect swallow the general rule of successor nonliability. 885 F.2d at 95 [emphasis added].

In *LaFountain v. Webb Industries Corp.,* 951 F.2d 544, 548 (3rd Cir.1991), the Third Circuit reaffirmed that a prerequisite to application of the product line exception is the "lack of a remedy against the predecessor [entity]." Even the case upon which Federal Insurance places principal reliance, *Olejar v. Powermatic Div. of DeVlieg–Bullard, Inc.,* 808 F.Supp. 439 (E.D.Pa.1992), recognized that "the product line exception require[s] that there exist no remaining cause of action against the original manufacturer." *Id.* at 441.[2]

Minwax maintains that potential remedies against Denwat (formally known as Watco–Dennis) have been available to Federal Insurance and that Denwat could satisfy a substantial judgment. Minwax points to the escrowed funds of $1.5 million and insurance coverage of as much as $6 million.[3]

Federal Insurance, citing *LaFountain, supra,* contends that the existence of insurance coverage is irrelevant. In *LaFountain,* however, it was the plaintiff who argued that because the successor corporation had liability insurance the risk of loss should be placed upon the successor corporation. 951 F.2d at 548. The Third Circuit rejected this argument, explaining that "[t]he presence or absence of insurance is not a prerequisite for, or defense against, liability under the product liability doctrine." *Id.* In other words, the fact that the successor corporation may have insurance coverage does not warrant application of the product line exception, and the absence of insurance coverage for the successor corporation is not a defense against application of liability under that doctrine. Insurance coverage for the successor corporation is simply irrelevant to the issue of whether the claimant has an available remedy against the predecessor corporation. In *Conway, supra,* Chief Judge Conaboy of this Court referred to the fact that "there was available insurance coverage" for the plaintiffs' claims. 692 F.Supp. at 452. Clearly, the fact that insurance coverage was maintained by the predecessor corporation, especially where, as here, the predecessor agreed to indemnify the successor corporation against tort liability, (*see* Exhibit "C" to Federal Insurance's Motion, (Dkt. Entry # 58) at pp. 34–35), is indeed material to the question of whether there remains available a remedy against the predecessor corporation.[4]

---

**2.** *Olejar* was concerned with the question of whether remedies against the original manufacturer were destroyed *by the transfer of the assets,* as opposed to being caused by "a subsequent bankruptcy or winding down of business...." *Id.* at 440 n. 2. This issue concerning causation need not be reached in the matter *sub judice* at this time because Federal Insurance has not established that it has no potential remedy against the original manufacturer or that it has pursued all available means to assert its claims against the original manufacturer. *Conway,* 885 F.2d at 980. It should also be noted that the ruling in *Olejar* that a causal connection was unnecessary has been rejected by other courts. *See, e.g., Tracey v. Winchester Repeating Arms Co.,* 745 F.Supp. 1099 (E.D.Pa.1990), *aff'd mem.,* 928 F.2d 397 (3rd Cir.1991).

**3.** It should be noted that the escrowed funds were deposited at the end of 1988 and were to

have been prudently vested. It is thus likely that the escrowed funds now exceed $1.5 million. It should also be noted that Federal Insurance has agreed that Minwax's liability will not exceed $1.25 million.

**4.** It bears noting that under Section 8 of the Agreement between Minwax and Watco–Dennis, the shareholders of Watco–Dennis, as well as the company itself, agreed to indemnify Minwax against product liability claims. In *Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602 (1992), the court refused to impose successor liability on the acquiring company where the acquiree's parent company had agreed to indemnify the acquiror. This holding suggests that Federal Insurance must demonstrate that it has no available remedy against any of the indemnitors under the asset purchase agreement, a showing which Federal Insurance has not made.

Finally, Federal Insurance complains that Minwax has not presented competent evidence of the existence of insurance coverage. Minwax has relied on the statement of counsel for Joanne Reid, Denwat's President, that insurance coverage of up to $6 million was in existence for claims made through March 31, 1994. (*See* Exhibit "A" to Federal Insurance's Motion, at pp. 33–34.) This information was provided at the request of Federal Insurance's counsel. (*Id.*) The information supplied by counsel to the President of Denwat is sufficient to undermine Federal Insurance's assertion that it "has no meaningful avenue of recourse or recovery" from Denwat. (Federal Insurance Reply Brief (Dkt. Entry # 76) at p. 6.) *See Clark v. Clabaugh,* 20 F.3d 1290, 1294–97 (3rd Cir.1994). Significantly, Federal Insurance has not presented any evidence that refutes the information provided by counsel to the President for Denwat.[5]

In short, Federal Insurance cannot avail itself of the product line exception if there have been available to it potential remedies against the predecessor corporation that Federal Insurance has failed to pursue. *See Girard v. Allis Chalmers Corp.,* 787 F.Supp. 482, 487 (W.D.Pa.1992); *Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 329–31, 603 A.2d 602 (1992). At a minimum, there is a genuine dispute as to whether there remains available to Federal Insurance remedies against Denwat and Watco–Dennis, who are now parties to this litigation. Accordingly, Federal Insurance's Motion for Partial Summary Judgment will be denied.[6]

Federal Insurance does question the applicability of the indemnity provision, contending that its claim is based on the purchase of Watco Danish Oil Finish that occurred in the early months of 1991 and that the indemnity obligation extends only to sales occurring prior to the closing date of December 29, 1988. It is not clear, however, that the indemnification obligation is based upon sales to consumers or sales by Watco–Dennis to distributors. Federal Insurance also contends that there is a dispute between Minwax and Denwat concerning the terms and conditions of the escrow agreement. While Federal Insurance thus casts some doubt as to the rationale for maintaining products liability insurance coverage and the availability of the escrowed funds to satisfy a judgment, it is Federal Insurance's burden to show that there is no dispute as to the existence of an available remedy. At best, Federal Insurance has shown that there is a genuine dispute as to whether it has an available remedy against the predecessor corporation, thus precluding summary judgment.

5. Even if Denwat does not maintain insurance coverage applicable to this matter, summary judgment in favor of Federal Insurance would be inappropriate. Federal Insurance has not disputed the existence of the $1.5 million in escrowed funds and it cannot be concluded that those funds would be unavailable to satisfy a judgment in favor of Federal Insurance against Denwat.

6. Summary Judgment in favor of Federal Insurance would eliminate the necessity to consider the question of whether the Watco Danish Oil Finish had been manufactured by Minwax or by its predecessor. While undoubtedly Federal Insurance would like to avoid that issue, the applicability of the product line exception does not turn upon the question of whether plaintiff can establish that the product in question was manufactured by the predecessor or successor entity.