In re RELATED ASBESTOS CASES.

No. C–79–3588 RFP.

United States District Court,
N.D. California.

Oct. 18, 1983.

Kenneth W. Carlson, Law Offices of Kenneth W. Carlson, Oakland, Cal., Norman B. Hendricks, Berkeley, Cal., Steven Kazan, Oakland, Cal., Robert P. Ross, Law Offices of Robert P. Ross, Beverly Hills, Cal., Peter J. McNulty, Gould, Sayre & Chavez, Santa Monica, Cal., John C. Smith, Jr., Tiernan & Smith, Inc., San Francisco, Cal., for plaintiffs.

Charles Negley, Douglas Wah, Maloney, Chase, Fisher & Hurst, James N. Penrod, Hassard, Bonnington, Rogers & Huber, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

## RE SUCCESSOR LIABILITY

PECKHAM, Chief Judge.

Cross-motions on the issue of the successor liability of defendant Pittsburgh Corning Corporation (Pittsburgh Corning) came before the court for hearing on October 3, 1983. The court, having reviewed the memoranda submitted in support of and in opposition to the cross-motions, and having heard argument of counsel, rules as follows.

## FACTUAL BACKGROUND

The issue before the court is whether Pittsburgh Corning is to be held liable as the successor manufacturer and distributor of an asbestos-containing product, Unibestos. Unibestos was originally manufactured from approximately 1936 through 1962 by Unarco Industries, Inc. (Unarco). In 1962, Unarco sold the entire Unibestos

product line, including the know-how, manufacturing facilities, customer lists, and exclusive right to use the trade name "Unibestos" to Pittsburgh Corning. From 1962 to 1972, Pittsburgh Corning was the sole manufacturer, producer, and distributor of Unibestos. In 1972, Pittsburgh Corning ended its manufacture, production, and distribution of Unibestos.

Following the 1962 sale of Unibestos to Pittsburgh Corning, Unarco remained in business, manufacturing and selling various other products. On July 29, 1982, Unarco filed a Debtor's Petition under Chapter 11 of the Bankruptcy Code in the United States District Court for the Northern District of Illinois. Upon the filing of this petition triggered an automatic stay that effectively stayed all legal proceedings against Unarco. 11 U.S.C. § 362(a).

### DISCUSSION

■ Under the California law governing this diversity action, a corporation acquiring the assets of another corporation is not normally liable for the debts or liabilities incurred by the predecessor corporation. *Ortiz v. South Bend Lathe*, 46 Cal.App.3d 842, 846, 120 Cal.Rptr. 556 (1975). In 1977, however, the California Supreme Court established an exception to this general rule when it found that a successor corporation could be deemed strictly liable for the product liability torts of a predecessor corporation. *Ray v. Alad*, 19 Cal.3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977). In reaching this conclusion, the *Alad* court considered three factors:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

*Id.* at 31, 136 Cal.Rptr. 574, 560 P.2d 3. This three-pronged analysis controls the decision here.

It is important to note that the facts of the instant case do not strictly accord with the facts before the California Supreme Court in *Alad*. In *Alad*, an injured plaintiff sued a successor corporation (Alad II) because the actual manufacturer of the defective product (Alad I) had sold out to the successor. The *Alad* plaintiff could not have sued the original manufacturer—Alad I—because that corporation no longer existed. Significantly, the predecessor corporation no longer existed because it had been bought out by the successor corporation Alad II. In that situation, where the successor corporation acquired all of the assets of the predecessor corporation, the California Supreme Court found that the successor corporation should be held strictly liable for the product liability torts of its predecessor.

That factual situation is not presented here. Pittsburgh Corning did not buy all of the assets of Unarco in 1962; it merely purchased one (out of hundreds) of Unarco's product lines. Unarco continued to exist after the 1962 sale and continues to exist today. The only reason that successor liability is even an issue in this case is Unarco's July 1982 decision to commence Chapter 11 proceedings. As a result of this decision by Unarco, an automatic stay went into effect that blocked the plaintiffs' litigation proceedings against Unarco. Thus, as a result of this decision, Unarco is—for all intents and purposes—a non-suable entity.

■ But before a successor corporation can be held strictly liable for the defective or dangerous products of its predecessor, *Alad* requires more than that the predecessor be non-suable. The first prong of the *Alad* test requires that "the virtual destruction of the plaintiff's remedies against the original manufacturer [be] *caused by* the successor's acquisition of the business." *Id.* (emphasis supplied). In other words, the very terms of, *Alad* require an element of causation; a successor corpora-

tion cannot be held liable for the product liability torts of its predecessor unless there is a showing that the successor caused—or at least contributed to—the plaintiff's inability to recover against the predecessor.

█ The record here is clear that this showing cannot be made. Pittsburgh Corning asserts, and the plaintiffs concede, that Pittsburgh Corning had nothing to do with the destruction of the plaintiffs' ability to recover against the predecessor corporation Unarco. The plaintiffs' lack of recourse stems entirely from Unarco's unilateral decision to avail itself of the bulwark of Chapter 11 of the Bankruptcy Code.

Given these facts, holding Pittsburgh Corning strictly liable for injuries caused by Unarco-manufactured Unibestos would be an unwarranted extension of the *Alad* logic. *Alad* permitted the shifting of the burden from a wholly blameless plaintiff to a successor corporation at least partially to blame for the destruction of the plaintiffs' remedies. In the instant case, Pittsburgh Corning is not partially blameworthy; it is in an entirely different situation than the successor corporation in *Alad.* The court cannot ascribe blame to Pittsburgh Corning for the destruction of plaintiffs' remedies by Unarco. It would be unfair—and beyond the scope of *Alad*—to hold Pittsburgh Corning liable for Unarco's decision to slam the bankruptcy door in the faces of the plaintiffs.

In an effort to surmount this obstacle, plaintiffs rely heavily on an unpublished order of a California Superior Court in *St. Jacque v. Johns-Manville, et al.,* No. C–137–465 (Cal.Super.Ct., L.A. County, March 16, 1983) finding Pittsburgh Corning strictly liable as the successor corporation to Unarco. By definition, the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), compels this court to follow the authoritative state law for its rule of decision in this diversity action. This *Erie* analysis requires this court to "determine state law as it believes the state high court would." 19 C. Wright,

A. Miller, & E. Cooper *Federal Practice and Procedure* § 4507 at 95 (1982). Indeed, as the U.S. Supreme Court has noted, "... the state's highest court is the best authority on its own law." *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

Accordingly, it is appropriate for this court to apply the law that would be applied by the California Supreme Court. But a close analysis of the Superior Court's rationale in *St. Jacque* makes clear that the trial court—for entirely understandable reasons—misapplied the law laid out by the California Supreme Court in *Alad.*

In reaching its conclusion, the *St. Jacque* court conceded that its result turned:

> principally on the necessity for a finding, as a matter of law, that plaintiff does not have a satisfactory remedy against the seller ...

> This court so finds having concluded that pursuit of asbestos manufacturers into Chapter 11 proceedings is neither satisfactory nor adequate as a remedy for individual plaintiffs.

> ... this court has previously stated its belief that fundamental fairness requires co-defendants, not innocent victims, to pursue those alleged joint tort-feasors who seek sanctuary within the federal bankruptcy laws.

*Id.* at 3.

This language makes clear that the state court in *St. Jacque* was motivated by a well-intentioned desire to thwart the efforts of asbestos defendants to hide behind the skirts of the bankruptcy laws. This effort to minimize the distorting effects of the automatic bankruptcy stays on blameless plaintiffs was undoubtedly founded upon admirable motives. But in its effort to aid the plaintiffs, *St. Jacque* did not fairly apply *Alad. St. Jacque* imposed successor liability upon a corporation that played no role in the destruction of the plaintiffs' recourse against the predecessor. This is a result neither contemplated nor condoned by *Alad.*

The issue before this court is whether Pittsburgh Corning should be held strictly liable for Unarco's decision to stymie litigation by filing for bankruptcy. A key premise of *Alad* —the controlling law from the California Supreme Court—is that successor liability is only appropriate when the successor corporation actually played some role in curtailing or destroying the plaintiffs' remedies. If the successor corporation cannot be said to have played any role in harming the plaintiffs' ability to recover—as is true in this case—then *Alad* should not be distorted into imposing successor liability.

Furthermore, it would be inaccurate to conclude that these plaintiffs are irrevocably and permanently barred from recovering against Unarco. At the conclusion of Unarco's Chapter 11 reorganization, the plaintiffs may indeed be able to recover, along with other creditors, some portion of whatever legitimate claims they can establish. It is even possible that the litigation stay now in effect because of the Chapter 11 proceeding will be lifted, thus permitting the plaintiffs to recover directly against Unarco. These considerations further underscore the unfairness of attributing successor liability to Pittsburgh Corning.

## CONCLUSION

Thus, for the reasons stated above, it would be inappropriate to hold Pittsburgh Corning liable for injuries allegedly caused by Unibestos manufactured by Unarco in the years before the 1962 sale. Accordingly, Pittsburgh Corning's motion for partial summary judgment on successor liability is granted and plaintiffs' motion in limine is denied.

SO ORDERED.