Robbie Sue HICKMAN, Plaintiff,

v.

THOMAS C. THOMPSON COMPANY, et al., Defendants.

Civ. A. No. 83-K-731.

United States District Court, D. Colorado.

Sept. 17, 1984.

Joseph M. Epstein, Kripke, Epstein & Lawrence, P.C., Denver, Colo., for plaintiff.

Bonner E. Templeton, Law Firm of Thomas J. deMarino, Denver, Colo., for Thomas C. Thompson Co.

G. Mike Hilgers, Arvada, Colo., for Ceramic Coating Co.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This case involves a strict liability tort claim for injuries sustained from the use of enamel paints manufactured and sold by the Thomas C. Thomson Company ("TCT") and the Thompson Enamel division of the Ceramic Coating Company ("CCC"). The case raises two questions of first impression under Colorado law: First, does Colorado recognize the emerging tort based product line exception to the general corporations and contract rule of nonliability of a purchaser of assets of a corporation. Second, do Colorado conflict of law provisions provide for analyzing successor liability issues as tort or contract problems.

Plaintiff, a resident of Colorado, alleges that she used copper enameling products manufactured by the defendants beginning in 1972. As a result of her use of these products for approximately ten years she states she developed lead poisoning. The enameling products were manufactured by TCT until 1981 when its operations were entirely acquired by CCC. Plaintiff seeks recovery from CCC for injuries sustained from the use of products which it manufactured and which were manufactured by TCT before 1981. Defendants argue that under strict products liability theory CCC cannot be liable for products manufactured by TCT. The case is now before me on plaintiff's motion for summary judgment.

The parties do not dispute the substantive events and chronology surrounding the purchase of the Thompson Enamel operations from TCT by CCC. Until 1981 Thompson Enamel products were manufactured and sold by TCT. In January, 1981 CCC, purchased all of the assets of TCT's enamel business, including its manufacturing facilities, formulas, inventory, customer lists and catalogs. As provided in the agreement, CCC continued to operate TCT's enamel business selling products manufactured in the same plant, using the same procedures and bearing the Thompson Enamel name. The contract specifically provided that TCT would retain all cash, accounts receivable, and intangible personal property. TCT was to pay all obligations outstanding at the time of sale. The agreement also provided that TCT would hold CCC "harmless from any and all claims, guarantees, warranties, agreements, and transactions of any kind arising out of the business" before the sale.[1] Essentially, CCC was to acquire an ongoing business and acquire the assets and liabilities associated therewith. To that end, key management employees of TCT stayed with CCC for one year to assist in the transition of the business from TCT to CCC. Finally, in October, 1983, CCC ceased operations at the old TCT manufacturing plant and consolidated its operations.

The two corporations did not merge, but remained as separate entities. The consideration paid by CCC was cash and there are no reasons to assume that the transaction was not conducted at arms length. TCT was liquidated and dissolved as a corporation within one year after the sale.

## SUCCESSOR LIABILITY

■ The traditional general rule of successor liability, as adopted in Colorado, provides for non-liability on the part of a successor corporation. The risk of loss falls upon the injured party in the breach of contract or tortious injury case. The rule is solely based on corporation and contract law. The rule provides as follows:

---

1. Any contract by which TCT may have agreed to indemnify CCC does not effect the liability of CCC to third parties.

[W]here one company sells or otherwise transfers all its assets to another company the latter is not liable for the debts and liabilities of the transferor, except where: (1) the purchaser expressly or impliedly agrees to assume such debts; (2) the transaction amounts to a consolidation or merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability for such debts. *Kloberdanz v. Joy Manufacturing Co.,* 288 F.Supp. 817 (D.Colo.1968).

*Ruiz v. ExCello Corp.,* 653 P.2d 415, 416 (Colo.App.), *cert. denied* (1982). *See also Colorado Springs Rapid Transit Ry. Co. v. Albrecht,* 22 Colo.App. 201, 123 P. 957 (1912). None of the exceptions to the traditional rule apply in this case. CCC did not expressly or impliedly assume the debts of TCT. The transaction did not amount to a merger. *See Kloberdanz v. Joy Mfg. Co.,* 288 F.Supp. 817, 821 (D.Colo.1968) (Doyle, J.). The purchasing corporation was not a continuation of the selling corporation, but rather a separate entity. Finally, there is no indication of fraud. The transaction appears, from all indications, to be a legitimate sale carried on at arms length.

A number of jurisdictions are moving away from the strict corporations and contract view of successor liability. Three states have adopted the so called product line exception to the general rule. *See Ray v. Alad Corp.,* 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977); *Ramirez v. Amsted Industries, Inc.,* 86 N.J. 332, 431 A.2d 811 (1981); *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 434 A.2d 106 (1981). The product line exception provides:

> That where one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes the same manufacturer's operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Ramirez, supra,* 431 A.2d at 825. This narrowly drawn exception recognizes that contemporary product liability derives not from fault but from policy evaluations of how best to prevent and insure against harm.

■ Colorado courts have consistently applied a progressive approach to products liability decisions. *See generally Prutch v. Ford Motor Co.,* 618 P.2d 657 (Colo.1980); *Kinard v. Coats Co., Inc.,* 37 Colo.App. 555, 553 P.2d 835 (1976); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276 (1978); *Good v. A.B. Chance,* 39 Colo.App. 70, 565 P.2d 217 (1977); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *see also,* Colo.Rev.Stat. §§ 13–21–401 through 406 (1983 Cum.Supp.). The product line exception comports with the general policies underlying strict product liability and the general rule is inconsistent with those policies. As the *Ray* court explained,

> The purpose of the rule of strict tort liability 'is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves. (citations omitted)

*Ray, supra,* at 560 P.2d at 8, 136 Cal.Rptr. at 579.

The successor to the original manufacturer is in a better position, vis-a-vis the consumer, to insure against the risks associated with defective products. This is consistent with the policy underlying strict product liability that the costs of compensating defenseless victims be spread throughout society. *Id.* at 10, 136 Cal.Rptr. at 581.

While assessing such costs against the original manufacturer is the preferable solution, it is not a viable solution in this case where TCT has liquidated. The assets and product liability insurance of a company that has gone out of business will provide little in the way of compensation for injuries sustained from products manufactured

by that company. *Id.* at 9–10, 136 Cal. Rptr. at 580–581.

Finally, as the Ray court also noted, the imposition of liability upon CCC for injuries sustained from products manufactured by TCT, in view of the facts of this case, is fair and equitable. CCC assumed the trade name, formula's, processes, manufacturing plant, labels and customer list of TCT. CCC utilized the ongoing good will associated with Thomas Enamel products in holding itself out to potential customers as the same enterprise manufacturing the same product line. "This deliberate albeit legitimate exploitation of [TCT's] established reputation as a going concern manufacturing a specific product line gave [CCC] a substantial benefit which its predecessor could not have enjoyed without the burden of potential liability from injuries from previously manufactured units." *Id.* at 10–11, 136 Cal.Rptr. at 581–582. The imposition of liability on successor manufacturers assigns liability to the same party which takes the benefit.

Defendants argue that Illinois law, which specifically rejects the product line exception, should apply in this case. *See Johnson v. Marshall & Huschart Machinery Co.*, 66 Ill.App.3d 766, 23 Ill.Dec. 505, 384 N.E.2d 141 (1978); *Hernandez v. Johnson Press Corp.*, 70 Ill.App.3d 664, 26 Ill.Dec. 777, 388 N.E.2d 778 (1979); *Domine v. Fulton Ironworks & Bridgeton Mach. Co.*, 76 Ill.App.3d 253, 32 Ill.Dec. 72, 395 N.E.2d 19 (1979); *Barron v. Kane & Roach, Inc.*, 79 Ill.App.3d 44, 34 Ill.Dec. 569, 398 N.E.2d 244. As I will discuss below, I find that Colorado conflict of law rules require the application of Colorado successor liability laws in strict liability tort cases. Moreover, the reasons articulated by the Illinois courts for rejecting the product line approach are inapplicable to this case or unpersuasive. Unlike in *Domine* the seller corporation here liquidated its assets and is not an ongoing concern from which the plaintiff can recover. Unlike in *Johnson* and *Hernandez* CTC personnel continued to provide consulting and advisory services to CCC after the sale. Also, unlike in *Johnson* and *Hernandez* there was not a

significant time span from the date of the sale to the date of the injuries. The connection of CCC to the plaintiff's injuries is anything but remote. Plaintiff, in fact, alleges that her injuries were ongoing and, at least in the later years, were the result of defective products manufactured by CCC.

Defendant points to *Ruiz v. Excello Corp., supra,* to suggest that Colorado rejects the product line exception. The *Ruiz* court did specifically state, in *simplex dictum,* that "there is nothing in the legislative history of the CPLA which indicates a legislative intent to abrogate the corporate rule of successor liability as applied to a manufacturer." *Id.* at 417. I do not, however, find this indicative of Colorado law concerning the product line exception. First, the holding in *Ruiz* provided for successor liability under the general rule. For resolution of the case in favor of an injured party, the court did not have to examine the product line exception. Second, the court's statement is not an expression of the law as presented by the Supreme Court of the State of Colorado. Third, as I have already analyzed, the product line exception is consistent with the law of strict product liability. Finally, Colorado statutes do envision vicarious liability of entities other than manufacturers when the manufacturer can not be sued. The statutes specifically provide for the liability of a seller who owns or is owned by the manufacturer and for the liability of a distributor when jurisdiction cannot be obtained over the manufacturer. Colo.Rev. Stat. §§ 13–21–401(1) and 402(2) (1983 Cum.Supp.). Clearly, the statute incorporates the policies underlying the strict product liability case law which seeks to distribute the costs of insuring against the risk of individual injury among the public as reflected in the costs of manufacturers' businesses.

Finally, the plaintiff suggests that Colorado would adopt a more liberal interpretation of the "mere continuation" or "merger" exceptions to the general successor liability rule. *See, e.g., Cyr. v. B. Offen &*

*Co., Inc.,* 501 F.2d 1145, 1151–54 (1st Cir. 1974); *Turner v. Bituminous Casualty Co.,* 397 Mich. 406, 244 N.W.2d 873, 877–84 (1976). As the plaintiffs note, however, these cases are distinguishable from the one before me. More importantly, expanding the mere continuation exception would open the door to expanded successor liability in contexts other than strict product liability cases. The reason to abrogate the general rule is to effectuate the policies underlying product liability law and not to provide a broader exception allowing successor liability in negligence or contract suits. The product line exception is more narrowly drawn and more clearly comports with Colorado law.

### CONFLICT OF LAWS

Normally, the procedure for a federal court sitting under diversity jurisdiction is to decide first which state's law applies to a specific problem. The court will apply the conflict of law rules of the forum in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Here, however, the logical order of analysis is a bit reversed. I need first analyze what Colorado law is with regard to successor liability before I can decide which state's law applies. Such analysis would seemingly put the cart before the horse, but this problem is best analyzed as a rear wheel drive vehicle.

Defendants argue that under the traditional successor liability rule the problem is best analyzed as a contract problem. Since the contract for sale of TCT was signed and executed in Illinois by two corporations with their operations based in Illinois then Illinois law should be applied. Illinois is the state with the most significant contacts with the problem.[2] *See Wood Bros. Homes v. Walker Adj. Bur.,* 198 Colo. 444, 601

**2.** Ironically, Illinois conflict of law rules view successor liability in strict product liability cases as an issue of Tort law not contract law. *Barron v. Kane & Roach, Inc., supra,* 398 N.W.2d at 246.

**3.** States vary as to whether they consider strict product liability as a tort or contract problem for conflict of law purposes. Before adoption

P.2d 1369, 1372–73 (1979). This standard is similar to Judge Doyle's analysis that under Colorado conflicts of law rules successor liability is determined under the law of the state in which the contract for sale of the business arose. *Kloberdanz v. Joy Manufacturing Co., supra.*

■ The *Kloberdanz* opinion accurately reflects Colorado conflicts of law rules in 1968, but not those applied today. *Kloberdanz* pre-dates both the emergence of strict liability for torts arising out of the manufacture or sale of products and the product line exception to the general contract successor liability rule. *See Hiigel, supra; Ray, supra.* The product line exception, as I view it, applies only as an extension of strict liability in tort law. It does not apply in the context of contract or other tort liability of successor corporations. Thus, successor liability, at least in the context of strict liability tort claims, is a tort problem not a contract problem. *See, Barron v. Kane & Roach, Inc., supra,* 398 N.E.2d at 246, *Litarowich v. Wierderkehr Kener,* 170 N.J.Super. 144, 405 A.2d 874, 877–78 (1979); *Turner v. Bituminous Casualty Co., supra.*

■ Under Colorado conflicts of law rules, I must apply the law of the state with the most significant contacts to the underlying tort.[3] *See Conlin v. Hutcheon,* 560 F.Supp. 934, 935 (D.Colo.1983). The products were used by the plaintiff in Colorado; the injury occurred in Colorado and plaintiff is a resident of Colorado. Thus, Colorado law applies in this case.

As I have discussed, the product line exception to the general rule of successor liability is applicable in this case under Colorado law. Therefore, CCC may be liable for injuries sustained by plaintiff as a

of the general significant contacts rule Colorado law considered products liability as a tort problem. *See Westric Battery v. Standard Elec. Co., Inc.,* 482 F.2d 1307, 1312–13 (10th Cir.1973). This is still the proper interpretation of the analysis to be applied under Colorado conflict of law rules.

result of her use of products manufactured by CCC's successor, TCT.

IT IS ORDERED that the plaintiff's motion for summary judgment is granted.