660 A.2d 1350

David J. KESELYAK and Norma Keselyak, his wife, Appellants,

v.

REACH ALL, INC. and Wajax, Ltd., Appellees.

Superior Court of Pennsylvania.

Argued Jan. 24, 1995.

Filed June 16, 1995.

72

Bruce J. Phillips, Pittsburgh, for appellants.

Lewis S. Kunkel, Jr., Harrisburg, for Wajax, appellee.

Before ROWLEY, President Judge, and McEWEN and POPOVICH, JJ.

McEWEN, Judge.

This appeal has been taken from the entry of summary judgment in favor of appellees, Reach All Inc. and Wajax, Ltd., who were named as defendants in this products liability suit by appellants, David J. and Norma Keselyak, wherein appellants sought to recover damages for injuries sustained when the auger portion of a Pitman Polecat Digger fell on appellant, David Keselyak, on June 5, 1991. The Polecat Digger, which was owned by appellant's employer, Pennsylvania Electric, had been manufactured by Pitman Manufacturing Co., Inc. ("Pitman") and sold to Pennsylvania Electric by Pitman Manufacturing Company ("PMC") as evidenced by a bill of sale dated February 22, 1986. Appellants instituted the present action on June 2, 1993, naming only Reach All, Inc., and Wajax, Ltd. as defendants.

Appellants alleged in their complaint that Reach All, Inc., a Minnesota corporation which had purchased the Polecat Digger product line in 1989, was liable to appellants under the theory of corporate successor liability as "the successor in interest to the assets and business of Pitman Manufacturing Ltd. by sale from Wajax, Ltd.". Appellants further alleged in their complaint that Wajax, Ltd., a Canadian corporation, was liable for the injuries sustained by appellant by virtue of being "the successor in interest to the assets and business of Pitman Manufacturing Ltd.". Appellants also alleged that the defendants, Reach All, Inc., and/or Wajax, Ltd. manufactured, sold, serviced, and/or maintained the Pitman Polecat Digger which injured appellant.

Appellees filed a joint motion for summary judgment on November 15, 1993, alleging that they were entitled to judgment in their favor as a matter of law as to all claims contained in appellants' complaint since:

the only relationship between Pitman Manufacturing Co., Inc. ("Pitman"), a Canadian corporation, Pitman Manufacturing Company, Inc. ("PMC"), a Pennsylvania corporation, and Wajax, Ltd. ("Wajax") was the direct or indirect ownership of stock.

Appellees further alleged in their motion for summary judgment:

that Pitman was, until 1989, engaged in the business of the manufacture and sale of equipment for the utility industry;

that PMC was, until 1989, engaged in the sale of replacement parts for equipment manufactured by Pitman;

that Pitman and PMC, although separate corporate entities, were wholly owned by Wajax, Ltd., a Canadian corporation; and

that Reach All, Inc., a Minnesota corporation, entered into an asset purchase agreement with Pitman, PMC, and Wajax, Ltd., dated December 5, 1989, whereby, in exchange for approximately 2.5 million dollars, the utility manufacturing business, its assets, and the exclusive right to manufacture

and sell digger derricks known as "Polecats", was sold to Reach All, Inc.

Appellees requested judgment in their favor, claiming that Reach All could not be liable to appellants since the Polecat Digger which malfunctioned and injured appellant was manufactured and sold prior to Reach All's purchase, in 1989, of the utility manufacturing business.

Appellees also argued that Wajax, Ltd., could not be liable for any damages caused by a digger manufactured by Pitman since, although Pitman was a wholly owned subsidiary of Wajax, the only connection between the two corporations was the ownership of stock.[1] Appellants, in response to the motion argued that Reach All was subject to liability as a successor corporation under the product line exception and that Wajax was also a proper defendant as a result of the provisions of Section 226 of the Canadian Business Corporations Act.

The learned Judge John M. Cascio, in granting the motion for summary judgment as to defendant Reach All, a Minnesota corporation, concluded that Reach All was not subject to suit as a successor corporation due to the continued existence of Pitman, the Canadian corporation which manufactured the Polecat Digger at issue in 1986 and which was not dissolved, pursuant to the Canadian Business Corporations Act, until December 15, 1992 as well as by the continued existence of PMC, the Pennsylvania corporation which had sold replacement parts for equipment manufactured by Pitman, and which may have sold the Polecat Digger at issue to Pennsylvania Electric.[2]

The trial court granted summary judgment in favor of Wajax based upon the provisions of the Canadian Business Corporations Act which the court found required that suit be instituted against Pitman on or before December 15, 1994, the second anniversary date of the dissolution of Pitman, in order

1. The documents produced by appellees in support of their motion for summary judgment indicate that the president of Wajax was also the president of Pitman and PMC.

2. The bill of sale for the Polecat Digger, although listing the seller as Pitman, listed the York, Pennsylvania address of PMC.

to reach any assets distributed from Pitman to Wajax. Although appellants argue that the Canadian Business Corporations Act permits a direct action on an unliquidated claim against any individual or entity which has received assets pursuant to the dissolution, we are not persuaded that the trial court committed an error of law in rejecting this argument.

■ Our scope of review, in ruling upon a motion for summary judgment, is plenary. Rule 1035(b) provides that summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Rule 1035(d) provides that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial".

"The moving party has the burden of proving the nonexistence of any genuine issue of material fact." *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 202–204, 412 A.2d 466, 468–469 (1979). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). *Accord: Commonwealth, Dept. of Environmental Resources v. Bryner,* 149 Pa.Cmwlth. 59, 62–64, 613 A.2d 43, 45 (1992).

The product line theory is an exception to the general rule that "when one company sells or transfers all of its assets to a successor company, the successor does not acquire the liabilities of the transferor corporation merely because of its succession to the transferor's assets." *Dawejko v. Jorgensen Steel Co.,* 290 Pa.Super. 15, 18, 434 A.2d 106, 107 (1981). *Accord Hickman v. Thomas C. Thompson Co.,* 592 F.Supp. 1282, 1283–84 (D.Colo.1984) (discussing Colorado law): *Ra-*

*mirez v. Amsted Industries, Inc.,* 86 N.J. 332, 340, 431 A.2d 811, 815 (1981). It was developed by the California Supreme Court in *Ray v. Alad Corp.,* 19 Cal.3d 22, 560 P.2d 3, 136 Cal.Rptr. 574 (1977), and has been adopted by the courts of New Jersey and Pennsylvania. *See Ramirez,* 86 N.J. at 358, 431 A.2d at 824–25; *Dawejko,* 290 Pa.Super. at 23–26, 434 A.2d at 110–11; *see also Hickman,* 592 F.Supp. at 1284–86 (predicting that Colorado would adopt the product line exception).

The product line exception provides that:

> [W]here one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor.

*Ramirez,* 86 N.J. at 358, 431 A.2d at 825; *see also Hickman,* 592 F.Supp. at 1284 (citing *Ramirez* formulation); *Dawejko,* 290 Pa.Super. at 23–26, 434 A.2d at 110–11 (citing and adopting same). Its purpose is to serve the social policies underlying strict products liability. *E.g., Ramirez,* 86 N.J. at 358, 431 A.2d at 825; *Dawejko,* 290 Pa.Super. at 26, 434 A.2d at 111. In accordance with this purpose, the California Supreme Court in *Ray* articulated three circumstances justifying the imposition of liability on a successor corporation under the product line exception:

> (1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading role, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business.

19 Cal.3d at 31, 560 P.2d at 8–9, 136 Cal.Rptr. at 579–80. The New Jersey and Pennsylvania courts have held that the existence of these three circumstances is an important, *see Ramirez*, 86 N.J. at 349–53, 431 A.2d at 820–22, although not necessarily the requisite or exclusive consideration, *see Dawejko*, 290 Pa.Super. at 26, 434 A.2d at 111, in determining whether the product line exception applies.

*Shorb v. Airco, Inc.*, 644 F.Supp. 923, 927–928 (E.D.Pa.1986) (footnote omitted).

■ Appellant does not dispute that, following the transfer of those assets of Pitman and PMC involved in the utility manufacturing line, including the right to manufacture and sell diggers known as "Polecats", Pitman and PMC remained viable, insured entities, Pitman being dissolved, pursuant to Canadian law, on December 15, 1992, and PMC remaining a viable corporation through the date of the filing of the complaint in the instant action. The trial court concluded, in conformity with appellate case law, that the continued existence of a viable cause of action [3] against Pitman and PMC precluded application of the product line exception so as to permit suit against Reach All, a company which had had no part in the manufacture, sale, or servicing of the Polecat Digger.

In *Conway v. White Trucks, Div. of White Motor Corp.*, 885 F.2d 90 (3d Cir.1989), we reviewed in detail the asserted bases for the product line exception to the general rule of non-liability of a successor corporation. Although the Supreme Court of Pennsylvania had not addressed the issue, for purposes of discussion we assumed that *Dawejko* represented Pennsylvania law. We predicted, however, that the exception would not apply "where the claimant had a potential remedy against the original manufacturer, but failed to exercise all available means to assert his or her claim. . . .

**3.** The argument of appellants that, because there is no *viable* cause of action against Wajax or PMC, Reach All is subject to successor liability under the product line exception is not well taken. Appellants could have instituted suit against Pitman and PMC within the statute of limitations and recovered any judgment obtained in that action from Wajax.

*[A]s a logical matter, the loss of a remedy against the original manufacturer must be a prerequisite to the invocation of the product line exception." Id. at 95, 434 A.2d 106. That is because the rationale of the product line exception is that "the virtual destruction of the plaintiff's remedies against the original manufacturer [was] caused by the successor's acquisition." Id. at 97, 434 A.2d 106.*

Nothing has happened since *Conway* was decided to indicate any weakening of its holding. In *South Bend Lathe, Inc. v. Amsted Indus.,* 925 F.2d 1043, 1047 (7th Cir.1991), the Court of Appeals for the Seventh Circuit said, "The continuation of the predecessor corporation bars recovery from the successor under the product line rule in every decision we have found that considers the issue."

*LaFountain v. Webb Industries Corp.,* 951 F.2d 544, 547 (3rd Cir.1991) (emphasis supplied).

As the *Conway* court noted, almost every court that has addressed the issue has "emphasized" the "requirement that the asset transfer must have caused the destruction of plaintiff's remedy." *Id.* at 95, 434 A.2d 106. *See Santa Maria v. Owens–Illinois, Inc.,* 808 F.2d 848, 859 (1st Cir. 1986); *Nelson v. Tiffany Industries, Inc.,* 778 F.2d 533, 538 (9th Cir.1985); *Kline v. Johns–Manville,* 745 F.2d 1217, 1220 (9th Cir.1984); *Tracey by Tracey v. Winchester Repeating Arms Co.,* 745 F.Supp. [1099] at 1108 [ (E.D.Pa. 1990) ]; *Hack v. H.V.R. Parts, Inc.,* 742 F.Supp. [283] at 285 [ (W.D.Pa.) ]; *In re Related Asbestos Cases,* 578 F.Supp. 91, 92 (N.D.Cal.1983); *Hall v. Armstrong Cork, Inc.,* 103 Wash.2d 258, 692 P.2d 787, 791 (1984); *Ray v. Alad Corp.,* 19 Cal.3d at 31, 136 Cal.Rptr. at 580, 560 P.2d at 9. As the court in *Tracey* noted, the causation element has been emphasized because "in order for the product line exception to be consistent with the policies which underlie strict liability in tort ... the conduct of the successor corporation must have some reasonable connection with the claimant's injuries." *Id.,* 745 F.Supp. at 1108.

*LaFountain v. Webb Industries Corp.,* 759 F.Supp. 236, 241 (E.D.Pa.1991), *aff'd* 951 F.2d 544 (3rd Cir.1991). Thus, since

the sale of the utility manufacturing line did not destroy any remedies against Pitman or PMC, the argument of appellants that the trial court erred in granting summary judgment in favor of Reach All, Inc., must be rejected as meritless.

■ Nor do we find any error in the ruling of the trial court that a direct action could not be maintained against Wajax, Inc., as the "successor in interest to the assets and business of Pitman Manufacturing, Ltd". Section 226 of the Canadian Business Corporations Act provides:

**Sec. 226. Definition of "shareholder".**—(1) In this section, "shareholder" includes the heirs and legal representatives of a shareholder.

(2) *Continuation of actions.*—Notwithstanding the dissolution of a body corporate under this Act,

(a) a civil, criminal or administrative action or proceeding commenced by or against the body corporate before its dissolution may be continued as if the body corporate had not been dissolved;

(b) *a civil, criminal or administrative action or proceeding may be brought against the body corporate within two years after its dissolution as if the body corporate had not been dissolved* (emphasis supplied); and

(c) any property that would have been available to satisfy any judgment or order if the body corporate had not been dissolved remains available for such purpose.

(3) *Service.*—Service of a document on a corporation after its dissolution may be effected by serving the document on a person shown in the last notice filed under section 106 or 113.

(4) *Reimbursement.*—Notwithstanding the dissolution of a body corporate under this Act, a shareholder to whom any of its property has been distributed is liable to any person claiming under subsection (2) to the extent of the amount received by that shareholder on such distribution, and an action to enforce such liability may be brought within two years after the date of the dissolution of the body corporate.

(5) *Representative action.*—A court may order an action referred to in subsection (4) to be brought against the persons who were shareholders as a class, subject to such conditions as the court thinks fit and, if the plaintiff establishes his claim, the court may refer the proceedings to a referee or other officer of the court who may

    (a) add as a party to the proceedings before him each person who was a shareholder found by the plaintiff;

    (b) determine, subject to subsection (4), the amount that each person who was a shareholder shall contribute towards satisfaction of the plaintiff's claim; and

    (c) direct payment of the amounts so determined.

Pitman was dissolved on December 15, 1992, pursuant to Section 210 of the Canadian Business Corporations Act.

Section 226(4) of the Canadian Business Corporations Act provides claimants the right to bring an action *"against the body corporate* within two years after its dissolution *as if the body corporate had not been dissolved"*. RSC Chapter C–44, Section 226, Subsection 2 (emphasis supplied). Appellants argue that, although Section 226(2)(b) authorized suit against Pitman until December 15, 1994, Section 226(4) permitted a direct action on their unliquidated claim against Wajax as "a shareholder to whom ... property has been distributed", without first proceeding against Pitman. We have been unable to locate any Canadian case law to support the interpretation of the Act urged upon us by appellants and find, based upon our reading of the entire Act, that the trial court properly concluded that unliquidated claims must first be reduced to a judgment against the dissolved corporation before "reimbursement" is sought pursuant to Section 226(4).

Appellants' final argument is that the holding of *Nanty–Glo Borough v. American Surety Co.,* 309 Pa. 236, 163 A. 523 (1932), precludes the entry of summary judgment in favor of Wajax since there remains a disputed issue of material fact as to the identity of the corporate entity which manufactured the Pitman Polecat Digger.

Since *Bremmer* [*v. Protected Home Mutual Life Ins. Co.*, 436 Pa. 494, 260 A.2d 785 (1970)] there have been numerous cases addressing the *Nanty–Glo* doctrine in the context of summary judgments. *See, e.g., Penn Center House, Inc. v. Hoffman*, [520 Pa. 171, 553 A.2d 900 (1989)] *supra; Thompson Coal Co. v. Pike Coal Co., supra; Johnson v. Johnson*, [410 Pa.Super. 631, 631, 600 A.2d 965 (1991)] *supra; Garcia v. Savage*, [402 Pa.Super. 324, 586 A.2d 1375 (1991)] *supra; Troy v. Kampgrounds of America, Inc.*, [399 Pa.Super. 41, 581 A.2d 665 (1990)] *supra.* A review of these cases demonstrates that there is an inherent three-step process involved in determining whether the *Nanty–Glo* rule applies so as to preclude a grant of summary judgment. Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the jury by resolving any material issues of fact.

It is only when the third stage is reached that *Nanty–Glo* comes into play. Thus, it is true that *Nanty–Glo* precludes summary judgment where the moving party relies solely upon testimonial affidavits and depositions of his witnesses to resolve material issues of fact. However, if there are no material issues of fact, or if the non-moving party has failed, in the first instance, to allege facts sufficient to make out a *prima facie* case, then summary judgment may be granted properly, even if the moving party has only set forth the pleadings and depositions of his witnesses in support thereof. Hence the language of Pa.R.C.P. 1035, which provides that "[a]fter the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings and *any* depositions, answers to interrogatories, admissions on file and supporting affidavits." Pa.R.C.P. No. 1035(a). Error only occurs if the moving party, in relying upon the testimonial affidavits of his witnesses, is attempting to resolve a material issue of

fact, or more importantly, is attempting to demonstrate the lack of any material issues of fact by asserting that the testimony of his witnesses is uncontradicted.

If there are no material issues of fact in dispute, and plaintiff has failed to allege facts sufficient to make out a *prima facie* case, as a matter of law, then summary judgment may be granted properly. Such was the result reached by our supreme court in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979). When confronted with appellant's argument that the trial court erred in granting summary judgment, in light of *Bremmer, supra,* 436 Pa. 494, 260 A.2d 785, and *Nanty–Glo, supra,* 309 Pa. 236, 163 A. 523, the court concluded:

> We have no credibility issue here. Assuming everything that appellants argue is accepted as pristine truth, appellants fail to make out a *prima facie* case *as a matter of law,* not as a matter of fact.

*Thompson Coal Co.,* 488 Pa. at 213–14, 412 A.2d at 474. *Dudley v. USX Corporation,* 414 Pa.Super. 160, 168–70, 606 A.2d 916, 920 (1992), *allo. denied,* 532 Pa. 663, 616 A.2d 985 (1992) (footnote omitted).

Appellants, in their complaint, alleged, *inter alia:*

SECOND: The defendant, Reach All, Inc., is a Minnesota corporation having its principal place of business at 1300 Port Terminal Road, Duluth, Minnesota 55802, and regularly doing business in Somerset County, Pennsylvania. Reach All, Inc., *is the successor in interest to the assets and business of Pitman Manufacturing, Ltd., by sale from Wajax, Ltd.* (emphasis supplied)

THIRD: The defendant, Wajax, Ltd., is a Canadian corporation having its principal place of business at 350 Sparks Street, Ottawa, Ontario, Canada KIR 758 and regularly doing business in Somerset County, Pennsylvania. Wajax, Ltd., *is the successor in interest to the assets and business of Pitman Manufacturing, Ltd.* (emphasis supplied)

FOURTH: On or about June 5, 1991, the husband-plaintiff, a lineman for Pennsylvania Electric, was working on a line crew removing the top of an old utility pole in Salisbury,

Somerset County, Pennsylvania. For this purpose the husband-plaintiff was working with a Pitman Polecat Digger, Model PC1342T, (hereinafter "digger") *manufactured, sold and distributed by the defendants.* The machine is used to remove old utility poles. On the date in question, part of the digger, a 1200 pound auger, fell from its secured position, striking the husband-plaintiff in the back and causing him serious and severe injuries. (emphasis supplied)

FIFTH: The digger *was manufactured and sold by the defendants, Reach All, Inc., and/or Wajax, Ltd. Defendants Reach All, Inc., and/or Wajax, Ltd., also serviced and maintained said machine at all times relevant hereto.* (emphasis supplied)

Appellees in their Answer and New Matter denied that Wajax and Reach All had any involvement with the manufacture, sale, or servicing of the Polecat Digger and, in new matter, alleged the following facts:

33. On information and belief, the digger was manufactured by Pitman Manufacturing Co., Inc., a Canadian corporation ("Pitman") and sold to Pennsylvania Electric by Pitman Manufacturing Company, Inc., now known as Pitman Crane Company, Inc., a Pennsylvania corporation ("PMC"), in or around January/February 1986.

34. Reach All purchased some of the assets, but no relevant liabilities of Pitman and PMC, on or about October 31, 1989 ("Partial Asset Sale").

35. While Pitman and PMC were owned directly or indirectly by Wajax at the time of the Partial Asset Sale, they were separate and independent corporations.

36. Pitman did not maintain or service the digger after its sale to Pennsylvania Electric.

37. On information and belief, PMC did not maintain or service the digger after its sale to Pennsylvania Electric.

38. On information and belief, neither Pitman nor PMC manufactured or sold parts for the digger to Pennsylvania Electric.

39. Neither Reach All nor Wajax serviced or maintained the digger.

40. Wajax is not a successor in interest to the assets, relevant liabilities, and business of either Pitman or PMC.

41. Reach All is not a successor in interest to all of the assets, or all of the business, or any relevant liabilities of either Pitman or PMC.

Appellees' answer with new matter, endorsed with a notice to plead, was filed on July 28, 1993. Appellants' response to new matter was required to be filed on or before August 17, 1993. Appellants, however, failed to respond to the factual averments in the new matter filed by appellees and, on November 15, 1993, appellees filed their motion for summary judgment which is the subject of the instant appeal, believing that there was no dispute over the identity of the manufacturer. More than two months later, on January 26, 1994, appellants filed the following untimely response to appellants' new matter:

33. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. Moreover, an officer of defendant Wajax, Inc., has represented that said defendant manufactured and sold the digger in question. (emphasis supplied)

34. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

35. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

36. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

37. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

38. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

39. *This is a factual averment which requires no response.* Nevertheless, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of this averment. (emphasis supplied)

40. This is a legal conclusion based on factual averments which, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of said facts. Without waiving the above, plaintiffs deny that Wajax is not the successor in interest, as defined in law, to Pitman and/or PMC and aver affirmatively that Wajax is the successor to the entire business of manufacturing and selling Polecat Diggers including physical assets, goodwill, trademarks and tradenames, sales organization and assets and all other assets necessary to be the successor to Pitman and/or PMC as necessary to establish successor liability.

41. This is a legal conclusion based on factual averments which, after reasonable investigation, plaintiffs are without knowledge or information sufficient to form a belief as to the truth of said facts. Without waiving the above, plaintiffs deny that Reach All is not the successor in interest, as defined in law, to Pitman and/or PMC and aver affirmatively that Reach All is the successor to the entire business of manufacturing and selling Polecat Diggers including physical assets, goodwill, trademarks and tradenames, sales organization and assets and all other assets necessary to be the successor to Pitman and/or PMC as necessary to establish successor liability.

■ Contrary to the representations of appellants, factual averments *do* require a response or they are deemed admit-

ted. *See: First Wisconsin Trust Co. v. Strausser,* 439 Pa.Super. 192, 199, 653 A.2d 688, 692 (1995); *Vintage Homes Inc. v. Levin,* 382 Pa.Super. 146, 151–53, 554 A.2d 989, 992 (1989), *allo. denied,* 524 Pa. 622, 571 A.2d 384 (1989). Rule 1029 of the Rules of Civil Procedure provides:

(a) A responsive pleading shall admit or deny each averment of *fact* in the preceding pleading or any part thereof to which it is responsive. A party denying only a part of an averment shall specify so much of it as is admitted and shall deny the remainder. Admissions and denials in a responsive pleading shall refer specifically to the paragraph in which the averment admitted or denied is set forth.

(b) *Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication.* A general denial or a demand for proof, except as provided by subdivision (c) of this rule, shall have the effect of an admission.

Pa.R.Civ.P. 1029(a)(b), 42 Pa.C.S. (emphasis supplied).

The claim of appellants that the trial court committed *Nanty–Glo* error, when it resolved the issue of the identity of the manufacturer of the Polecat Digger, ignores the failure of appellants to respond to the allegations of appellees' new matter until months after the filing of the motion for summary judgment, and the subsequent failure of appellants to properly deny the factual averments contained in the new matter. The trial court, of course, could well have proceeded to the entry of summary judgment in favor of appellees by reason of this failure of appellants. Since the trial court did not rely upon this failure as a basis for the entry of summary judgment, we, as well, will overlook these pleading deficiencies. However, because

[t]he record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, *Marks v. Tasman, supra,* 527 Pa. at 135, 589 A.2d at 206, and

[e]rror only occurs if the moving party, in relying upon the testimonial affidavits of his witnesses, is attempting to resolve a material issue of fact, or more importantly, is attempting to demonstrate the lack of any material issues of fact by asserting that the testimony of his witnesses is uncontradicted, *Dudley v. USX Corporation, supra,* 414 Pa.Super. at 169, 606 A.2d at 920,

we will vacate the judgment as to Wajax Inc. only, and remand the record so as to permit appellants the opportunity to produce documentary evidence to establish that Wajax, Inc., did manufacture, retail, distribute, or service the Pitman Polecat Digger at issue.[4]

Judgment entered in favor of Reach All, Inc., affirmed. Judgment entered in favor of Wajax, Inc., vacated and case remanded for further proceedings on the motion for summary judgment. Jurisdiction relinquished.

POPOVICH, J., files a concurring and dissenting statement.

POPOVICH, Judge, concurring and dissenting:

I concur in the majority's finding that summary judgment was properly entered in favor of Reach All, Inc. However, I feel that the judgment entered in favor of Wajax, Inc. should also be affirmed because appellants did not deny the factual allegations in appellees' new matter. Our Rules of Civil Procedure mandate that the factual averments in appellees' new matter be deemed admitted because of appellants' untimely response. Thus, I believe that summary judgment in favor of appellee Wajax, Inc. would have been proper because of appellant's procedural defects.

---

4. We emphasize that the sole issue to be presented to the court on remand in the continuation of the summary judgment proceeding is whether Wajax Inc. is liable to appellants as the *actual* manufacturer, supplier, retailer, or servicer of the Polecat Digger.