# Dillman v. Indiana Rolls Inc.

C.P. of Lehigh County, no. 2001-C-1963.

*Mark K. Altemose,* for plaintiffs.
*Thomas C. Sadler Jr.,* for defendants.
*Brent A. Green,* for additional defendant.

LAVELLE, *S.J., Specially Presiding,* April 21, 2004— This is a product liability action in which plaintiff seeks damages for injuries he allegedly sustained while using a machine manufactured by Bertsch and Company Inc. Plaintiff has filed a motion for partial summary judgment in which he seeks a declaration that defendant Park Corporation is subject to strict liability in tort as the successor-in-interest to Bertsch.

## BACKGROUND

Husband-plaintiff (Dillman) alleges that he sustained personal injuries on February 26, 2000, while using a Bertsch initial pinch type plate bending roll machine.[1]

---

1. A plate bending roll machine forms plate steel into cylinders and cones.

While feeding a piece of metal into the machine, Dillman claims that a glove on his left hand became caught on a burr and his hand was pulled into the rollers, resulting in the partial amputation of several fingers.

The machine in question was manufactured in 1965 by Bertsch and Company Inc. Bertsch was founded in 1879 and began designing and manufacturing initial pinch type plate bending roll machines and other metal fabricating machines in or about the year 1900. In 1984, after experiencing a period of financial difficulty, Bertsch commenced negotiations with Park for the sale of its assets, including its line of bending roll machines. On or about November 30, 1984, Park and Bertsch entered into a written agreement for the sale of substantially all of Bertsch's assets, excluding accounts receivable, for $1.9 million (later reduced to $1.5 million because of title problems relating to Bertsch's real estate holdings). Among the assets to be sold were Bertsch's trade names and logos, engineering drawings, customer lists and other records. As a condition of the agreement, Bertsch was required to file a Chapter 11 bankruptcy proceeding and obtain approval of the sale from the Bankruptcy Court. The agreement also required that Bertsch, following consummation of the sale to Park, would cease transacting business and distribute its remaining assets to its creditors.

Bertsch filed its Chapter 11 petition on November 13, 1984, and requested court approval of the asset sale to Park on November 29, 1984. William Cook, Park's vice-president, testified in another product liability action against Park that the provision requiring the bankruptcy proceeding was imposed so that Park could obtain the

assets free and clear of the liens and claims of Bertsch's creditors. "They [Bertsch] decided the only way that they could give us the assets clear was by going into bankruptcy. To put it through to Bankruptcy Court." Deposition of William Cook, p. 89. (Plaintiffs' exhibit 14.) Cook further testified that the bankruptcy filing was solely Bertsch's idea and that Park thought there might be some risk to the proceedings. *(Id.)*

Bertsch's counsel in the negotiations with Park were Wayne C. Ponader, Esquire, and John G. Deckard, Esquire. Both attorneys testified by affidavits that by November 10, 1984, the essential terms of the asset purchase agreement had been agreed upon and that one of the conditions of the sale was that Bertsch would file for protection under Chapter 11 of the Bankruptcy Code. (Affidavits of Wayne C. Ponader and John G. Deckard, plaintiffs' exhibit 15.)

For purposes of the instant motion, the parties entered into a stipulation in which they agreed:

(1) That the machine that injured plaintiff was defective and unsafe;

(2) That various exhibits, including depositions and affidavits, developed during discovery in the case of *Rhodes v. Bertsch, a Division of Park Corporation,* filed in the United States District Court for the Middle District of Pennsylvania to No. 3:CV-91-1601, be considered as evidence in determining the instant motion. The plaintiff in *Rhodes* sustained an injury similar to that sustained by Dillman using a Bertsch bending roll machine of similar, if not identical, design to the machine which injured Dillman.

## DISCUSSION

The sole issue presented by the instant motion is whether Dillman is, as a matter of law, entitled to summary judgment against Park on the theory that Park is the successor in interest to Bertsch under the "product line" exception to the rule of successor liability.

### *The Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions and affidavits demonstrate that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. " 'The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party' . . . . Summary judgment may be entered only in those cases where the right is clear and free from doubt." *Abbott v. Anchor Glass Container Corp.,* 758 A.2d 1219, 1223 (Pa. Super. 2000); *Schroeder v. PennDOT,* 551 Pa. 243, 710 A.2d 23 (1998).

### *Successor Liability*

Under Pennsylvania's successor liability law, the general rule is that when one company sells or transfers its assets to another company, the successor does not become liable for the debts and liabilities of the predecessor merely because of its acquisition of the predecessor's assets. *Husak v. Berkel Incorporated,* 234 Pa. Super. 452, 341 A.2d 174 (1975). Our courts, however, have carved out an exception to this general rule of non-liability in

the so-called "product line" exception, which the Superior Court has succinctly stated in the following language:

"[Where] one corporation acquires all or substantially all the manufacturing assets of another corporation, even if exclusively for cash, and undertakes essentially the same manufacturing operation as the selling corporation, the purchasing corporation is strictly liable for injuries caused by defects in units of the same product line, even if previously manufactured and distributed by the selling corporation or its predecessor." *Dawejko v. Jorgensen Steel Co.,* 290 Pa. Super. 15, 23, 434 A.2d 106, 110 (1981).

In reaching this formulation, the *Dawejko* court cited the California Supreme Court's decision in *Ray v. Alad Corporation,* 19 Cal. 3d 22, 136 Cal. Rptr. 574, 560 P.2d 3 (1977). The *Ray* court stated that the product line exception would be imposed on the successor corporation if these three circumstances were shown: "(1) the virtual destruction of the plaintiff's remedies against the original manufacturer by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." *Dawejko,* 290 Pa. Super. at 22-23, 434 A.2d at 109; *Ray,* 19 Cal. 3d at 30-31, 136 Cal. Rptr. at 579, 560 P.2d at 8-9.

The *Dawejko* court characterized the *Ray* factors as advisory only. However, in *Hill v. Trailmobile Inc.,* 412 Pa. Super. 320, 603 A.2d 602 (1992), the Superior Court

restated the rule to require proof of all three *Ray* factors in order to establish the product line exception to the general rule of non-liability. See also, *Keselyak v. Reach All Inc.,* 443 Pa. Super. 71, 660 A.2d 1350 (1995).

Applying the *Ray* factors to the instant case, we find that the following uncontroverted salient facts are dispositive of the issue of Park's successor liability:

(1) Park acquired substantially all of the assets of Bertsch, including all machinery, equipment, inventory, work-in-process and spare parts.

(2) The acquisition of Bertsch's assets by Park effectively destroyed Dillman's remedies against Bertsch, inasmuch as the asset purchase agreement required Bertsch to file a Chapter 11 bankruptcy petition and then go out of business. Moreover, at the time of the sale, Bertsch was without product liability insurance and no provisions were made, either in the bankruptcy proceeding or in the asset purchase agreement, for the payment of product liability claims.

(3) Park continued to manufacture and sell the same product line as Bertsch, and held itself out as the "Bertsch Division of Park Corporation."

(4) Park hired several of Bertsch's former employees, including sales, engineering, and production personnel, and for a period of time operated the business out of Bertsch's former premises in Cambridge City, Indiana.

(5) Park acquired all of Bertsch's business records, including engineering drawings of Bertsch's product line, patents, copyrights, logos and trade names.

(6) After acquiring Bertsch's assets, Park wrote to Bertsch's former dealers, advising them that Bertsch was

now a division of Park Corporation and that "[p]roduction of new machines, repair parts, and complete machine rebuilds are ongoing with the same quality that has kept this company at the top of the industry for over 115 years." (Plaintiff's exhibit 5.) It is evident from Park's advertising and promotional literature that it sought to capitalize on Bertsch's name, reputation and good will, and to convey to the general public the impression that Bertsch and Company was an ongoing business enterprise as a division of Park Corporation.

(7) Park is covered by a policy of product liability insurance providing coverage for claims by individuals injured by machines manufactured by its predecessor, including the claims asserted by Dillman.

The foregoing facts, as well as the entire record developed in this case, clearly bring Park squarely within the product line exception. We have no hesitancy in finding that all of the *Ray* factors have been satisfied.

Park, however, argues that the first *Ray* factor—destruction of Dillman's remedies against Bertsch—has not been satisfied because Dillman has not showed the requisite "causation," *i.e.* proof that the asset purchase destroyed Dillman's remedies against Bertsch. Park asserts that there is a genuine issue of material fact as to why Bertsch and Company filed for bankruptcy because "*Ray* does not apply where there is a good faith dissolution in bankruptcy which is not intended to avoid future tort claims against the predecessor," citing *Nelson v. Tiffany Industries Inc.,* 778 F.2d 533, 538 (9th Cir. 1985). Park also cites *Nelson* for the proposition that where the predecessor files bankruptcy "before the successor's pur-

chase of assets, the essential element of causation will be shown by evidence of a collusive agreement to use bankruptcy proceedings to shield the successor corporation from the predecessor's liabilities." *Id.* at 537.

The *Nelson* principle has not been adopted by any Pennsylvania court. Even if it were the law of Pennsylvania, however, we would still find Park's argument unpersuasive since paragraph 3 of the asset purchase agreement, captioned "Chapter 11 proceedings," clearly provided that:

"It is understood that seller *will* file an appropriate petition under Chapter 11 of the Bankruptcy Code and that the purchase and sale contemplated under this agreement shall be subject to the approval and consent of the Bankruptcy Court, and the District Court. *It is further understood that following the consummation of this sale, seller will distribute all of its assets to its creditors and no longer continue in business.*" Plaintiff's exhibit 18. (emphasis added)

If collusion is, as argued by Park, an essential element of causation, the foregoing provision is the "smoking gun" to support a finding of such collusion.[2]

---

2. We also note that paragraph 14(d) of the same agreement, under buyer's conditions of closing, provides that "The Bankruptcy Court for the Southern District of Indiana shall have approved this purchase and sale prior to January 31, 1985," and further that paragraph 14(e) calls for a final order of confirmation being entered by the United States District Court. It is also noteworthy that the entire transaction, beginning with the initiation of the bankruptcy proceeding and ending with confirmation of the sale by the District Court and execution of the asset purchase agreement, was accomplished within a time period of less than three weeks.

## CONCLUSION

For the reasons set forth above, we will grant plaintiff's motion for partial summary judgment.

## ORDER

And now, April 21, 2004, upon consideration of plaintiff's motion for partial summary judgment and the briefs and submissions of counsel, including the affidavits, depositions and other exhibits offered by the parties, and after oral argument thereon, it is hereby ordered and decreed that plaintiff's motion be, and the same hereby is, granted, and defendant Park Corporation is declared to be the successor-in-interest to Bertsch and Company and shall stand in its shoes for purposes of liability to plaintiff for the manufacture, sale and distribution of a defective product by the said Bertsch and Company.